UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN DEUTSH, Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION No. 1:15-CV-490-LY |
| | § | |
| ROY HENRY, Defendant | § | |

**DEFENDANT'S SUPPLEMENTAL BRIEF**

Defendant submits this supplemental brief at the request of the Court. His principal argument concerns Plaintiff's standing to bring this suit. Without standing, the Court lacks jurisdiction and must dismiss the suit. While the brief focuses on this particular case, it has applicability to the other 390+ cases that Plaintiff has filed within a year's time.

Here, Defendant requests this Court to compel Plaintiff to produce three sets of documents: (1) his visit log to all the places he claims lack compliance; (2) copies of settlement agreements in past cases alleging the same things as he alleged in this case (defendants' names redacted); and (3) copies of Plaintiff's income tax returns for 2015.[1]

Defendant argues these documents are relevant because he believes that this suit is part of a larger scheme, perpetrated by Plaintiff's attorney, to extort thousands of dollars from small businesses. As such, these documents will help prove the existence of the scheme, showing that Plaintiff's complained-of injury is not a reality in fact and is not sufficient to sustain this lawsuit.

STATEMENT OF FACTS

On February 21, 2015, at 3:52pm, Plaintiff visited his second taquería of the day. Before his stop at Taquería Los Jaliscienses, he visited two gas stations, another taquería, and a storage unit business. Afterward, Plaintiff would visit an insurance broker. He sued them all.

When Plaintiff arrived at Los Jalisciences, Defendant's property, he allegedly noticed a lack of van-accessible parking, a high threshold at the front door, and a too-steep ramp leading

---

[1] To the extent he claims privilege on any matter, Plaintiff has produced no privilege log.

up to the entrance. Plaintiff claims these features prevented him from utilizing the taquería, although he did say he ate there, but later claimed he didn't.

Defendant believes that Plaintiff did not suffer the injury he alleges, either because he never intended to enter the restaurant or, if he did, he was not denied access. If Plaintiff did not suffer the injury he alleges, he lacks standing to bring this suit, which would result in a judgment for Defendant because he cannot show he is entitled to an injunction—his only possible relief under Title III of the Americans with Disabilities Act ("ADA"). 42 U.S.C. §12188(a)(2).

## RULE

To obtain an injunction, Plaintiff must establish standing by showing: (1) he suffered an injury in fact; (2) the alleged violation caused the alleged injury; and (3) the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Frame v. City of Arlington*, 657 F.3d 215, 235–36 (5th Cir. 2011). The ADA allows the prevailing party to collect attorney's fees. 42 U.S.C. §12205.

In discovery, "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D.Tex., Dallas Div. 2006) (internal citations omitted).

The documents Defendant requests are relevant to his defense that Plaintiff lacks standing. Additionally, Defendant argues that Plaintiff's claims of privilege are invalid.

## ANALYSIS

*1. Plaintiff lacks standing because he cannot show a concrete injury.*

In this case, Plaintiff has not provided specific facts to establish each element of standing. In fact, the evidence shows that Plaintiff lacks standing under the "injury in fact" prong.

To establish injury in fact, Plaintiff must show: (1) that the injury is concrete and particularized; and (2) that the injury is actual or imminent. *Lujan*, that is, "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 & n.1. Further, the "injury ... must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is 'distinct and palpable'...." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (quoting *Warth v. Seldin*, 422 U.S 490, 501 (1975)). "The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged ... conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (internal quotations omitted). A plaintiff cannot establish imminence through mere plans to go back "someday." *Frame*, 657 F.3d at 235. Rather, a plaintiff must provide a description of concrete plans to return. *Lujan*, 504 U.S. at 560, n.1. "It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *Lyons*, 461 U.S. 107, n.8 (emphasis in original).[2]

In *Hunter v. Branch Banking and Trust Co.*, the court found that an activist plaintiff had standing where she provided uncontested evidence of her intent to return to the defendant property. 2013 WL 4052411 at *5 (N.D.Tex. 2013). There, the plaintiff, a blind woman who had a history of filing ADA suits with the aid of an activist organization, sued a bank for non-compliant ATMs. *Id.* at *1. The defendant sought to dismiss the action for lack of subject-matter jurisdiction, arguing that she lacked standing. However, the court found the plaintiff had shown standing, based "primarily on her sworn declaration that she 'intend[s] to continue to visit the

---

[2] It actually appears from the photographs in a number of the pleadings in the 390+ cases that Plaintiff "visited" businesses when they were actually closed, which would further undermine any "injury in fact" argument. He rarely specified an actual date when he allegedly visited a business, just listing the month (e.g. "in August"). *See, e.g.*, Jon R. Deutsch v. Chiwawa, Inc., CA No. 1:15-CV-1238-LY in this Court.

3

specific BB & T ATMs identified ... because [she is] often in the vicinity of those ATMs and [she] desire[s] to have access to the banking services that are offered at those ATMs.'" *Id.* at *3. The court reasoned that "[a]lthough the weight to be given [the plaintiff]'s statement is affected by the absence of specific supporting facts, her sworn assertion is not contradicted by any other evidence in the record." *Id.* Additionally, the court was not persuaded that her litigation history precluded standing because, in the case before the court, that history did not "undermine the credibility of statements made in the instant case." *Id.* at *5..

Conversely, in In *Brother v. Tiger Partner, LLC*, the court granted summary judgment in favor of a hotel because the plaintiff's "speculative" arguments failed to establish standing. 331 F.Supp.2d 1368, 1373, 1375 (M.D.Fla. 2004). The, the plaintiff alleged that the hotel violated the ADA by not providing deaf kits in its rooms. The hotel sought summary judgment on the grounds that the plaintiff lacked standing to sue because he did not demonstrate an immediate threat of future injury. The court agreed, saying that the plaintiff could not show danger of future injury when he only had plans to return "someday." *Id.* at 1373. Additionally, the court determined that the plaintiff's post-filing efforts to return to the hotel were immaterial because he was "involved in a multitude of lawsuits against the hotel industry." *Id.* at 1374.

In *Tiger Partner*, the court cited to *Brother v. CPL Investments, Inc.*, 317 F.Supp.2d 1358 (S.D.Fla. 2004), an almost identical suit against another hotel, which had determined that Brother could not establish an injury in fact because he: (1) never went inside the hotel, performing only a visual inspection of it; (2) did not stay at the hotel; and (3) was party to over 50 other similar ADA suits in Florida. *Id.* at 1374 (citing *CPL Investments*, 317 F.Supp.2d at 1368–69) ("In light of his extensive litigation, the fact that he never stayed at the hotel, and his testimony about why he did not keep a subsequent reservation, the Court does not credit Mr. Brother's allegation that he intended to patronize the hotel.").

4

As in *CPL Investments*, the *Tiger Partner* court was not persuaded by Brother's amorphous intent to return to the hotel. *Tiger Partner*, 331 F.Supp.2d at 1374. The judge did not mince words: "[I]n view of his extensive litigation history, Mr. Brother's professed intent to return to the property is insufficient. Indeed, to satisfy Article III's standing requirements, Mr. Brother has professed an intent to return to all fifty-four of the properties he has sued. This is simply implausible." *Id.* at 1374–75. In short, the court implied that Brother and his lawyer, William Charouhis were running a scam.

Similarly, in *Rodriguez v. Investco, LLC*, Charouhis represented another serial plaintiff, Jorge Luis Rodriguez. 305 F.Supp.2d 1278, 1279 (M.D.Fla. 2004). In *Investco*, the court found that Rodriguez failed to establish that the defendant engaged in discrimination against him, thus failing to establish an injury in fact. *Id*. at 1284.

The court found Rodriguez's arguments incredible and vague: "At trial, Plaintiff was evasive and willfully ignorant, totally lacking credibility. His explanation for his initial visit to the Facility was disingenuous, and he did not convey any honest desire to return there. Plaintiff's testimony left the distinct impression that he is merely a professional pawn in an ongoing scheme to bilk attorney's fees from the Defendant." *Id.* at 1285.

The court condemned the duo's lack of interest in creating access: "Here, suit was filed less than a week after Plaintiff's counsel verified the ADA deficiencies. There was no effort to communicate with the property owner to encourage voluntary compliance, no warning and no offer to forbear during a reasonable period of time while remedial measures are taken.... [Rodriguez's] current ADA lawsuit binge is, therefore, essentially driven by economics—that is, the economics of attorney's fees." *Id.* at 1281–82. Deutsch and his attorney have perpetrated a similar scheme for financial gain, and this case is part and parcel of that scheme.

This case bears little resemblance to *Hunter*, in which an activist plaintiff sued for access. Rather, it is more like *Tiger Partner*, *CPL Investments*, and *Investco*, all cases in which serial plaintiffs sued to profit under the guise of activism. Unlike in *Hunter*, many of Plaintiff's assertions are contradicted by the record, raising the question of whether his intent to return to Defendant's property is genuine. *See Norkunas v. Wynn Resorts Holdings, LLC*, 2007 WL 2949569 at *4 (D.Nev. 2007) ("The requirement that Plaintiffs submit evidence to support their professed intent to return to Wynn Las Vegas is especially important where, as here, Plaintiffs have an extensive litigation history relating to ADA claims.").

For example, in his deposition, Plaintiff could not testify to whether he has been back to the taquería to see if the changes have been made. *See* First Deutsh Depo. at 27. He never directly answered the question; instead, he claimed, "It hasn't changed. Nothing's changed." *Id.* However, Plaintiff's credibility was challenged seconds later when he claims he never saw an access lane in the parking lot. *Id.* at 28. This is demonstrably false; Plaintiff's complaint contains photos that very clearly show all or part of the access lane leading to the taquería. *See* [Dkt. 1, Figs. 1–5, at 4–6]. Instead of showing an intent to return, possibly exposing him to imminent injury, Plaintiff demonstrates his lack of concern over the taquería's compliance. Put simply, any vague argument about intent to return is not sufficient to demonstrate imminent future injury. *See Parr v. L&L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1079 (D.Haw. 2000) ("The record, however, indicates that Plaintiff visited this [restaurant] only one time. Lacking a history of past patronage seems to negate the possibility of future injury at this particular location.").

Plaintiff's litigation history further undermines his credibility. *See Molski v. Kahn Winery*, 405 F.Supp.2d 1160, 1168 (C.D.Cal. 2005) (holding that litigation history is relevant in determining standing under the ADA). His pleadings, like Brother's, are nearly identical; he merely copied and pasted the names of new defendants into an existing pleading template.

6

Needless to say, an injury cannot be all that "concrete and particular," if it has allegedly occurred, in an identical way, almost 400 times.

The veracity of his intent to return is undermined by his nearly 400 identical lawsuits. Because the lawsuits are identical, Plaintiff must make the same argument for standing in each case, meaning he would have to profess a convincing intent to return to each of the 390+ businesses. In *Tiger Partner*, the court said that plaintiff's desire to return to all fifty of his defendant establishments "is simply implausible." 331 F.Supp.2d at 1374–75. If it is implausible to return to and patronize fifty establishments, it is certainly implausible to do the same with 390. *See, e.g.*, *Molski*, 405 F.Supp.2d at 1165 ("If it is 'simply implausible' that a plaintiff would return to fifty-four public accommodations [as in *Tiger Partner*], [the plaintiff's] expressed intent to return to [all] 500 businesses [he has sued] spread across the entire state of California is highly doubtful."); *see also Harris v. Stonecrest Care Auto Center, LLC*, 472 F.Supp.2d 1208, 1216–17 (holding that plaintiff was unlikely to return to defendant's property given the high volume of ADA lawsuits filed "considering his limited presence in the area").

Further, Plaintiff's credulity is strained by his admissions that: he did not read the complaint; he did not take the photographs in the complaint; and he only visited Defendant's property because it was on a list provided by his attorney. These facts strongly imply that Plaintiff did not suffer a particularized injury, or did not suffer an injury at all.[3] If Plaintiff did not read the complaint or cannot remember what was contained therein, he likely did not suffer a concrete enough injury to be cognizable under the law. If he cannot remember why he sued, his injury, if any, must have been relatively minor; people with real injuries remember why they sue. *See Molski*, 405 F.Supp.2d at 1165 (finding that plaintiff's "pattern of abusive litigation" under the ADA undermined his credibility).

---

[3] The relevant deposition excerpts are attached as Exhibit 1 and are in the record already.

Additionally, the list provided by Plaintiff's attorney is part and parcel of a drive-by lawsuit. The list outlined which violations Plaintiff should look for (if he looked at all). Once Plaintiff (or perhaps his attorney) checked off a location on the list, he files a suit claiming he was injured by each business. This testimony, in conjunction with the absence of additional evidence to support his claim, suggests that Plaintiff might have only performed a visual inspection of the premises, a factor which led the *CPL Investments* court to believe that Steven Brother never suffered a concrete injury. 317 F.Supp.2d at 1368; *see also Molski*, 405 F.Supp.2d at 1165 (noting that during serial plaintiff's visits to multiple businesses, "[i]t would be highly unusual—to say the least—for anyone to sustain two injuries, let alone three, in a single day, each of which necessitated a separate federal lawsuit."). Production of the entire list could help Defendant establish the existence of a scam and therefore lack of jurisdiction.

In a Missouri case that consolidated twelve ADA cases, the district judge, looked at the *Molski* analysis, and dismissed all twelve cases and levied attorneys' fees against a "serial plaintiff," using a four-part test: (1) the proximity of the place of public accommodation to her residence, (2) her past patronage of defendant's business, (3) the definitiveness of her plans to return, and (4) her frequency of travel near defendant.[4] Based on the facts, the judge determined that the plaintiff failed to demonstrate an injury (real and immediate threat of repeated injury) in fact and, thus, lacked standing to sue the defendants under ADA Title III.

The judge noted that, as an ADA Title III plaintiff, she did not show a concrete, particularized, and credible plan to return to the defendants' businesses. He observed that the plaintiff's complaints did not indicate when she visited the defendants' businesses, why she visited, or how often she visited each business. Her visits were one-shot deals.

---

[4] Connie Steelman v. Rib Crib #18, No. 11-3433-CV-S-RED, W.D.Mo., So.Div. (Sept. 12, 2012), https://scholar.google.com/scholar_case?case=9276936761292099869&q=steelman+v.+rib+crib&hl=en&as_sdt=6,44&as_vis=1. *See* standing discussion in Andrew A. Nicely, "Seeking Shelter from Abusive ADA Lawsuits," Bloomberg Law Reports (2009), http://www.noevalleymerchants.com/ada/ada_articlelaw.pdf.

The court also found that her allegations about patronizing some of the businesses were false. In the *Clark* case in this Court, Deutsch testified he visited the Nest, but could not recall the correct side of the street where it is located. Nor did the outside patio furniture display appear in the lawsuit photographs, although the display is supposedly what drew him to the store.

Defendant suggests the *Steelman* test would be an appropriate one for the Court to adopt.

The evidence produced thus far suggests that Deutsch and his attorney are involved in a moneymaking scheme. The requested documents are relevant because they likely will reveal further details of the scheme. Production of the log book, prior settlement agreements, and income tax returns could reveal facts that further support Defendant's argument that Plaintiff lacks standing. The Court therefore should compel Plaintiff to produce these relevant documents.

*2. Plaintiff's claims for privilege are unconvincing.*

Much like other documents and communications, the standard for settlement agreements is that discovery of the agreements is relevant and that the documents are admissible or reasonably likely to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

Plaintiff's settlement agreements with other defendants are relevant for several important purposes. First, they are relevant to determining whether the Plaintiff ever asked for redress of the alleged ADA violations by prior Defendants. If he never demanded that the violations be remedied, that inaction is an indication that he is not using the ADA framework for its proper purpose. Further, if Plaintiff never cared that the violations were fixed and never intended to patronize these establishments subsequently, he lacks standing to bring this suit.

The settlements might be further evidence of improper and possibly illegal motivations behind Plaintiff's pursuit of his ADA lawsuits against so many small businesses. They could provide evidence that previous lawsuits were really efforts to secure money for himself and his attorney, rather than tools to make businesses more accessible.

These agreements are not privileged; the U.S. 6th Circuit Court of Appeals, the only circuit to recognize a privilege for settlement-related communications, held that the settlement privilege does not extend to the contents of the agreement. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981-82 (6th Cir. 2003). An assertion that settlement agreements are confidential is not enough to shield them from discovery because they would not be protected unless they were privileged. *Id.*

At the May 26, 2016 hearing, Plaintiff's attorney waived any privilege that may have shielded these settlement agreements from discovery by refusing to answer the judge's questions about a possible fee-splitting arrangement between him and the Plaintiff. He refused to answer on the basis he could not discuss confidential settlement agreements. However, communications in the course of furthering an ongoing or future criminal or fraudulent scheme are not protected by the attorney-client privilege. *In Re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005).

Defendant believes the settlement agreements are relevant to uncovering a fee-splitting scheme between Plaintiff and his attorney. These agreements could potentially show the extent of the financial gains that Plaintiff and his attorney have received from their previous lawsuits. The terms of these settlement agreements could also be relevant to the question of whether they had an improper motive when they brought this case. These communications are not protected because keeping them confidential and shielding them from discovery would hide the best evidence of the exact fraudulent or criminal scheme that the settlement agreements were created to further and record. These settlement agreements were the mechanism by which Plaintiff and his attorney secured the financial gains that were the purpose of their scheme.

Plaintiff's tax returns are also not privileged because they are filed with and disclosed to the government. *U.S. v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981). Plaintiff's tax returns are

relevant because they can provide evidence of whether he gained illegal profits from the settlement agreements he negotiated with prior Defendants.

Further, the tax returns are relevant to showing whether it was financially feasible for him to patronize the hundreds of businesses he filed suit against within a very limited timeframe. If the Plaintiff's income was not high enough for him to have legitimately patronized these businesses, that information is relevant to standing because it is evidence that he never truly intended to access the businesses he sued.

## CONCLUSION

Defendant respectfully requests that the Court overrule Plaintiff's objections in their entirety.

Dated: June 3, 2016

        Respectfully submitted,

        */s/ James C. Harrington*

        _____
        James C. Harrington
        Texas Bar No. 09048500
        1405 Montopolis Dr.
        Austin, TX 78741
        (512) 474-5073 [phone]
        (512) 474-0726 [fax]

        ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that on June 3, 2016, I served this document to counsel of record for the Defendant, Omar W. Rosales, P.O. Box 6429, Austin, TX 78762, through this Court's system via e-mail to talon_eye@yahoo.com.

        */s/ James C. Harrington*

        _____
        James C. Harrington

**EXHIBIT 1 – DEPOSITION EXCERPTS**

Q. Okay. So -- yeah. You read your lawsuit before you filed it, right?

A. Did I read it? No.

First Deutsch Deposition (*Henry* case) at 31 (in this case).

---------------------------------

Q. Okay. Who took the pictures?

A. I'm not sure who took the pictures.

Q. You didn't, did you?

A. No.

Q. And when you've gone to these places, you're not the one who's taking the pictures, are you?

A. No.

First Deutsch Deposition (*Henry* case) at 33.

---------------------------------

Q Okay. Why is it, Mr. Deutsch, that in your picture attached to your lawsuit that there are no cars in the parking lot?

...

A. I wasn't there when the pictures were taken.

Q. Oh. Who took the pictures?

A. I couldn't tell you. I don't know.

Q. You -- you filed hundreds of lawsuits and you never asked who takes the pictures?

A. I would assume the attorney.

Q. You would assume the attorney. But you never ask the question. Right?

A. No.

Second Deutsch Deposition at 53–54 (*Deutsch v. Roni and Chris Clark*, No. 1:16-CV-88).

---------------------------------

Q. So, your lawyer tells you here's a list and you went out and checked these places out, right?

A. Yes.

Q. So your lawyer says go to the FedEx on Burnet, and it says no van accessible space, so your deal was to go look and -- so you could say that you've been there and you found that there was no van accessible space?

A. Correct.

First Deutsch Deposition (*Henry* case) at 16–17.