### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| JON R. DEUTSCH, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:16-CV-088-LY |
| | § | |
| CHRIS D. and RONI CLARK, | § | |
| Defendants | § | |

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| JON R. DEUTSCH, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:15-CV-807-LY |
| | § | |
| DRAKER ENTERPRISES, INC., | § | |
| Defendant | § | |

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| JON R. DEUTSCH, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:15-CV-490-LY |
| | § | |
| ROY HENRY, | § | |
| Defendant | § | |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JON R. DEUTSCH,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:15-CV-00901-** |
| **RP** | | |
| | § | |
| **LA TIERRA DE SIMMONS** | § | |
| **FAMILIA LTD.,** | § | |
| **Defendant** | § | |

---

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JON R. DEUTSCH,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:15-CV-00974-** |
| **RP** | | |
| | § | |
| **PHIL'S ICEHOUSE, INC.,** | § | |
| **Defendant** | § | |

---

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JON R. DEUTSCH,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:15-CV-01238-** |
| **LY** | | |
| | § | |
| **CHIWAWA, INC.,** | § | |
| **Defendant** | § | |

---

**DEFENDANTS' CONSOLIDATED SUPPLEMENTAL MEMORANDUM
TO SPECIFY SANCTIONABLE MISCONDUCT**

## I.        Introduction and Summary

In accordance with the Court's instructions during the August 3, 2016 hearing and the Order of August 4, 2016, Defendants offer this Memorandum to specify the sanctionable misconduct of Respondents (Plaintiff Deutsch and Plaintiff's counsel, Mr. Rosales).[1] Attached as Exhibit 1 is an itemized list of Respondents' potentially sanctionable misconduct with citations to applicable court records documenting those acts.

In sum, the sanctionable misconduct fits in the following categories:

> (a) False, abusive statements concerning defense counsel, Mr. Harrington.
>
> (b) Mr. Rosales's fabricated email.
>
> (c) Mr. Rosales's criminal-stalking charges against Mr. Harrington.
>
> (d) Plaintiff's motion for separate hearings.
>
> (e) Mr. Rosales's improper, derogatory statements concerning this Court and Judge Yeakel.
>
> (f) Unethical settlement practices in restricting the right to practice law.
>
> (g) Sharing fees with a non-lawyer.

---

[1] For convenience, this Memorandum sometimes refers to Plaintiff Deutsch and Mr. Rosales, collectively, as "Respondents." However, Defendants recognize that the Court must make a culpability determination concerning the Respondents' respective responsibility for any sanctionable conduct. *See, e.g., Smith Int'l, Inc. v. Texas Commerce Bank, N.A.,* 844 F.2d 1193, 1201-02 (5th Cir. 1988) (holding that a court must determine the relative culpability of each person involved in the sanctionable conduct and must apportion sanctions among the offending persons in a manner that reflects the extent and result of each person's individual violations); *Allstate Ins. Co. v. Mader,* 201 F. App'x 261, 264 (5th Cir. 2006) (overturning a sanctions award when the record did not reflect the required culpability determination).

(h) Mr. Rosales's conflicts of interest.

(i) Mr. Rosales's violations of the Texas Disciplinary Rules of Professional Conduct.

The conduct in issue is sanctionable under this Court's inherent power. Additionally, if this Court issues a show-cause Order as provided by Rule 11(c)(3), categories (a), (b), (d), and (e) are sanctionable under Rule 11.

## II.  Sanctionable Misconduct of Plaintiff and Mr. Rosales

### A. False, abusive statements

Plaintiff and Mr. Rosales have made false, abusive statements concerning defense counsel, Jim Harrington, in over 100 instances in the present cases. Attached Exhibit 1 lists those statements and where they appear in each of the cases. The statements include the following:

- Mr. Harrington has made "continual comments" that "show a high level of hostility, racism, and hatred to people who are not the majority and white like Jim Harrington."

- Mr. Harrington believes it is "acceptable to refer to Hispanics as toads, sapos, snitches, and South American Pieces of Shit."

- Mr. Harrington's purported use of the term sapo is "the same racist and twisted logic that refers to people of color as monkey's [sic], gorillas, rats, and roaches."

- Mr. Harrington used "racist and anti-Semitic terms against minorities (and then claim[ed] it is okay because he is married to a minority)."

- That if Mr. Harrington "is hearing angels, he needs medical treatment immediately."

- Mr. Harrington "is in a fugue state and doesn't really know what is going on."

- Mr. Harrington "treats Hispanics like servants and 'noble savages' that need

his superlative help and guidance."

- Mr. Harrington noticed depositions at Maudie's restaurant (which has the parking lot that is the basis of Plaintiff's claims in one of the ADA lawsuits) as a "covert racist jab at Plaintiff's counsel" and "in order to make fun of Plaintiff counsel's ancestry and race . . . [which] is both racist and inflammatory."

- Because Mr. Harrington noticed depositions at Maudie's restaurant, "Does Jim Harrington expect Mr. Rosales to mop the floors and bring him chips and salsa also? If Mr. Rosales were African-American, would Jim Harrington order the Deposition be held in a Church's Fried Chicken? If Mr. Rosales were Asian, would Harrington order the Deposition be held in a Chinese Buffet restaurant?"

- Mr. Harrington is a "lying draft dodger."

- "[C]alling [Mr. Harrington] a coward would be generous."

Exhibit 1 contains a complete list of the abusive statements that are sanctionable.[2] By making those statements, Mr. Rosales has violated basic standards of professional conduct required of all lawyers, and also Local Rules of the Western District of Texas. Local Rule AT-4(d) provides in pertinent part:

---

[2] *See Mayes v. Kollman*, 560 F. App'x 389, 395 (5th Cir. 2014) (citing *United States v. Young*, 470 U.S. 1, 9 (1985) (observing that "inflammatory attacks on the opposing advocate" have "no place in the administration of justice and should neither be permitted nor rewarded; a trial judge should deal promptly with any breach [of this rule] by either counsel"); *In re First City Bancorporation of Texas Inc*., 282 F.3d 864, 867 (5th Cir. 2002) (holding that the bankruptcy court did not abuse its discretion by imposing a $25,000 monetary sanction on an attorney who referred to opposing counsel as "incompetent," and an "underling" who graduated from a 29th-tier law school); *Petito v. Brewster*, 2008 WL 631326, at *3 (N.D. Tex. 2008) (imposing inherent-power sanctions against an attorney for rhetorical attacks on opposing counsel, including ambiguous references to "known families in New York and New Jersey," "giving the nod," and having a "sit down" to discuss some type of unspecified action); *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (describing "ad hominem attacks on opposing counsel" as "offensive" and sanctionable); *Thomas v. Tenneco Packaging Co., Inc*., 293 F.3d 1306, 1308 (11th Cir. 2002) ("We conclude that an attorney who submits . . . ad hominem attacks directed at opposing counsel is subject to sanction under the court's inherent power to oversee attorneys practicing before it.").

> A lawyer should treat all other lawyers, all parties, and all witnesses courteously, not only in court, but also in other written and oral communication.

Local Rule AT-5(e) provides:

> A lawyer must avoid disparaging personal remarks or acrimony toward opposing counsel.[3]

Plaintiff and Mr. Rosales have no justification for the challenged, abusive statements. Accordingly, Defendants request that the Court consider each of the abusive statements, make the required culpability determination between Mr. Deutsch and Mr. Rosales, and assess appropriate sanctions.

## B.  Fabricated email

Recently discovered evidence indicates that Mr. Rosales may have fabricated false evidence. Specifically, as part of Plaintiff's Response in Opposition to [Defendants']

---

[3] Similarly, the statements violate several provisions of the Texas Lawyer's Creed. *See* Texas Lawyer's Creed, Arts. III (stating that a lawyer owes to opposing counsel in litigation "courtesy, candor, [and] cooperation"); III.1 (providing that a lawyer shall be "courteous, civil, and prompt in oral and written communications"); III.9 (providing that a lawyer "can disagree without being disagreeable. . . . [E]ffective representation does not require antagonistic or obnoxious behavior"); III.10 (providing that a lawyer shall not "without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety . . . [and] will avoid disparaging personal remarks or acrimony towards opposing counsel . . . ."). *See generally* Proclamation of Chief Judges of United States District Courts in Texas (Nov. 9, 1994) ("commending" to all lawyers a "thorough study" of the Creed); *Lelsz v. Kavanagh*, 137 F.R.D. 646 (N.D. Tex. 1991) (ordering removal of an Assistant Texas Attorney General from a case as a sanction for violating the professionalism standards adopted by the Northern District in *Dondi Props. Corp. v. Community Sav. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1989) (en banc); the attorney's misconduct included filing unsubstantiated discovery objections based solely on the attorney's personal animosity toward opposing counsel, demonstrating a "lack of candor" with the court, and "maintain[ing] a pattern of combative and improper conduct even after repeated and strident warnings from the Court"); *but see* Order of Adoption of the Texas Lawyer's Creed (Western District) (Jan. 30, 1995) (stating that the Creed is "aspirational" and not a basis for sanctions).

Motion to Compel and Motion for Sanctions in *Deutsch v. Clark*, 1-16-CV-0088-LY, Mr. Rosales attached an email that he allegedly sent from his email address (talon_eye@yahoo.com) to Mr. Harrington's email address (jch@utexas.edu) on June 22, 2016 at 3:25 p.m. ("the disputed email.").[4] In the disputed email, Mr. Rosales allegedly made his third request for available dates to complete Defendants' depositions. But Mr. Harrington has no record of ever receiving the disputed email from Mr. Rosales or any of the other purported email requests to complete Defendants' depositions that Mr. Rosales referred to in the disputed email.[5]

Concerned that his email system might have a problem, Mr. Harrington obtained the email server logs from the University of Texas showing all the emails that were sent to his email address at jch@utexas.edu from 1:00 p.m. until 12:00 a.m. on June 22, 2016. Those email server logs showed that Mr. Harrington did not receive any emails from Mr. Rosales's email address (talon_eye@yahoo.com) during that period.[6]

After examining the disputed email further, Mr. Harrington discovered that by copying and pasting the "Subject," "From," "To," and "Date" lines of the filed PDF version of the disputed email into a Word document, the "To" email address *changes*

---

[4] *See Deutsch v. Clark*, 1:16-CV-0088-LY, Ex. 4 to Dkt. # 62. Mr. Rosales submitted Exhibit 4 as support for his claim that he had repeatedly requested dates to complete Defendants' depositions. *See Deutsch v. Clark*, 1:16-CV-0088-LY, Dkt. # 62, p. 9.

[5] Shortly after receiving Plaintiff's Response in Opposition to [Defendants'] Motion to Compel (Dkt. # 62) in *Deutsch v. Clark*, 1:16-CV-0088-LY, Mr. Harrington requested that Mr. Rosales provide him with copies of Mr. Rosales's previous requests for dates on which to complete the Defendants' deposition. Mr. Rosales never responded to Mr. Harrington's request.

[6] Mr. Harrington is willing to provide to the Court *in camera* a copy of the email server logs he obtained from the University of Texas. Such *in camera* inspection is required because the server logs disclose all of Mr. Harrington's email communications during the relevant time period, including unrelated email communications.

from Mr. Harrington's email address at "jch@utexas.edu" to Mr. Rosales's email address at talon_eye@yahoo.com. Likewise, the "Date" the email was sent *changes* from "Wednesday, June 22, 2016 3:35 PM" to "Friday, July 8, 2016 4:22 PM"—apparently showing that Mr. Rosales sent the email to himself less than 20 minutes before he filed his Response in Opposition to [Defendants'] Motion to Compel. The screenshots below illustrate the *changes* that occur to the disputed email by copying and pasting the PDF version that was filed by Plaintiff's counsel into a Word document:

**Fig. 1: Screenshot of PDF version of Ex. 4 to Dkt. 62 filed by Plaintiff in *Deutsch v. Clark*, 1:16-CV-0088-LY (highlights added)**

**Fig 2: Screenshot of Same Section of Ex. 4 to Dkt. 62 in *Deutsch v. Clark*, 1:16-CV-0088-LY After Copying and Pasting Into Word Document (highlights added)**



Subject: Re: Friday's Depositions¶
From: Omar Rosales (talon_eye@yahoo.com)¶
To: talon_eye@yahoo.com.¶
Date: Friday, July 8, 2016 4:22 PM¶
Mr. Harrington,¶
Once again, I have asked you 3 times to provide Deposition dates to complete the depos¶
for Chris Clark and Roni Clark.¶
Please provide me some dates and identify a suitable location.¶
- Omar Rosales¶

Based on the above screenshots, it appears that Mr. Rosales (i) drafted the disputed email, (ii) sent it to himself on Friday, July 8, 2016 at 4:22 p.m. (shortly before filing his Response), (iii) altered the email to himself to show that it had been sent to Mr. Harrington on June 22, 2016 at 3:25 p.m., and (iv) then filed the fabricated email with the Court.[7] Obviously, computer quirks occur and there may be a reasonable explanation for both the changes in the email and the fact that Mr. Harrington never received the email. However, if Mr. Rosales did manufacture the email and then chose to file that manufactured evidence with the Court, that conduct would be grossly improper and a fraud on the Court that warrants substantial sanctions under this Court's inherent

---

[7] Additionally, converting the PDF version of the disputed email into a Word document using Adobe Pro shows that "text boxes" have been placed over the "To" and "Date" sections of the disputed email, creating the appearance that the "To" and "Date" entries on the disputed email were altered after the email had been originally sent.

powers.[8] Further, Mr. Rosales also violated Rule 11(b)(3) by filing the fabricated email with the Court as support for his assertion in Plaintiff's Response in Opposition to [Defendants'] Motion to Compel and Motion for Sanctions that Mr. Harrington "never made the Clark's [sic] available to complete their depositions."[9]

### C. Mr. Rosales's criminal-stalking charge and related allegations against Mr. Harrington

In May 2016, Mr. Rosales filed a report with the Austin Police Department and sought and obtained an *ex parte* restraining order against Mr. Harrington in Travis County court (the "Application for Protective Order"). The restraining order required that Mr. Harrington stay 200 yards away from Mr. Rosales and his brother, Andrew Rosales,

---

[8] *See Sarco Creek Ranch v. Greeson*, 2016 WL 852781, at *11 (S.D. Tex. 2016) (imposing death-penalty sanctions and awarding attorney's fees under the court's inherent power because the plaintiff submitted a fabricated exhibit and misrepresented the origins of the exhibit; holding that "the only proper remedy for this serious and repetitive misconduct is sanctions that result in dismissal of the claims he asserts"); *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 235 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (affirming death-penalty sanctions based on the plaintiff's presentation of a manufactured audiotape; citing Texas Penal Code § 37.09(a) and noting that "[f]abricating evidence is a third degree felony. An act so destructive of the integrity of our judicial process, such as the fabrication of physical evidence, deserves serious punishment. Such intentionally egregious behavior warrants punishment that places the guilty party in a worse position than that from which she began."); *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (upholding dismissal of plaintiff's case with prejudice after the district court determined the plaintiff had "manufactured evidence and perjured testimony . . . in an attempt to enhance plaintiff's case through fraudulent conduct"; holding that manufacturing documentary exhibits constitutes "an attempt to perpetrate a fraud on the court" and is sanctionable under inherent power); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir. 1989) (dismissing a case in which plaintiff attached a fabricated document to the complaint); *see also* Tex. Disciplinary R. Prof'l Conduct Rules 3.04(a)(1) (prohibiting "unlawfully alter[ing] . . . a document"); 3.04(b) (prohibiting "falsify[ing] evidence"); 8.04(a)(3) (prohibiting "dishonesty, fraud, deceit or misrepresentation"); 8.04(a)(4) (prohibiting obstruction of justice).

[9] *Deutsch v. Clark*, 1:16–CV–088–LY, Plaintiff's Response in Opposition to [Defendants'] Motion to Compel and Motion for Sanctions [Dkt. # 62] at 9.

and not communicate with them.[10] The Application for Protective Order was based on the same spurious allegations that this Court found to be "baseless and borderline incredible"[11]—specifically, that Mr. Harrington was harassing, threatening, and stalking the Plaintiff's counsel.[12]

The Application for Protective Order and Mr. Rosales's police report had no merit, were abusive, and were filed solely to gain an improper tactical advantage in this litigation and to impede Mr. Harrington's ability to represent his clients in these proceedings.[13] For example, if Mr. Harrington had been prohibited from communicating with Mr. Rosales or coming within 200 yards of him or his brother, Mr. Harrington would not have been able to represent his clients effectively or adequately in this litigation. A lawyer who cannot talk to opposing counsel or be in the same building with

---

[10] *See Rosales v. Harrington*, Cause No. C-1-CV-16-004470, In County Court at Law # 4, Travis County, Texas Application for Protective Order Under Article 7A, attached as Exhibit 2; Temporary Ex Parte Protective Order, attached as Exhibit 3, which prohibits Mr. Harrington from coming within 200 yards of Mr. Rosales or his brother Andrew Rosales, who Mr. Harrington was seeking to depose in these proceedings.

[11] *See Deutsch v. Clark*, 1:16-CV-88-LY, Order [Dkt. # 30] at 5.

[12] *See id.; see also Deutsch v. Clark*, 1:16-CV-88-LY, Motion for Adverse Inference, Motion for Sanctions, and Motion to Disqualify Attorney [Dkt. # 15] (making the same accusations of harassing, threatening, and stalking against Mr. Harrington). Notably, Mr. Rosales continued to pursue the Application for Protective Order even after the hearing on May 26, 2016, at which this Court was critical of Mr. Rosales's allegations of stalking against Mr. Harrington, *and* after this Court issued its May 27, 2016 Order characterizing Mr. Rosales's allegations as "baseless and borderline incredible." *See Deutsch v. Clark*, 1:16-CV-88-LY, Order [Dkt. # 30] at 5. .

[13] Mr. Harrington was required to retain counsel and seek emergency relief from the County Court in order to represent his clients in this proceeding and to attend the May 26 hearing without violating the Temporary Protective Order. *See Rosales v. Harrington*, Cause No. C-1-CV-16-004470, In County Court at Law # 4, Travis County, Texas, Respondent James C. Harrington's Emergency Motion to Modify or Dissolve Temporary Ex Parte Restraining Order, attached as Exhibit 4. Mr. Rosales opposed that relief. Travis County Court at Law Judge Mike Denton granted the relief that Mr. Harrington sought—after a separate hearing—and dismissed Mr. Rosales's Application for Protective Order. *See Rosales v. Harrington*, Cause No. C-1-CV-16-004470, In County Court at Law # 4, Travis County, Texas, Order of June 3, 2016 (denying application for protective order), attached as Exhibit 5.

opposing counsel obviously cannot effectively handle a case. Mr. Harrington would not have been able to conduct depositions, or to comply with the local rules or court orders requiring his attendance at hearings and requiring him to communicate with opposing counsel.[14]

Mr. Rosales filed a baseless police report and sought and obtained a restraining order with the purpose of undermining the administration of justice in these cases by preventing Mr. Harrington from being able to meet the procedural requirements that apply in this Court. That bizarre tactic and deliberate misconduct warrant the imposition of sanctions under this Court's inherent power.[15]

### D.  The Motion for Separate Hearing

Plaintiff and Mr. Rosales also violated Rule 11(b)(1) by filing the Motion for Separate Hearing in *Deutsch v. Clark*, 1:16-CV-88-LY, for an improper purpose.[16] Shortly after obtaining the *ex parte* temporary restraining order against Mr. Harrington in state court, Plaintiff filed a motion with this Court requesting that the Court hold two separate hearings. Incredibly, Plaintiff asked the Court to have one hearing with Mr. Rosales present and a separate, second with Mr. Harrington present—to address various

---

[14] *See, e.g.,* Local Rules CV-7(i) (requiring lawyers to confer regarding motions); AT-4(a) (requiring lawyers to cooperate with one another).

[15] *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991) (holding that a district court may sanction parties for conduct that occurs in portions of the court proceeding that are not part of the trial itself); *FDIC v. Maxxam, Inc.,* 523 F.3d 566, 590–91 (5th Cir. 2008) (holding that *Chambers* allows for sanctions when a party's "bad-faith conduct" threatens the trial court's authority or proceedings); *cf. In re Yorkshire, LLC*, 540 F.3d 328, 331-32 (5th Cir. 2008) (imposing sanctions for filing bankruptcy in bad faith, in part to avoid a venue hearing in state court).

[16] *See Deutsch v. Clark*, 1:16-CV-88-LY, Motion for Separate Hearing [Dkt. # 25].

motions that were set to be heard on May 26, 2016.[17] The motion was based on the requirement in the *ex parte* restraining order (which Mr. Rosales had obtained and which the trial court immediately set aside after the evidentiary hearing) that Mr. Harrington not go within 200 yards of Mr. Rosales.[18] The motion had no legitimate purpose. This Court denied the motion. Mr. Rosales's misconduct in presenting that motion merits sanctions.

### E.  Mr. Rosales's improper, derogatory statements concerning this Court and Judge Yeakel

Mr. Rosales made sanctionable, derogatory allegations against this Court and Judge Yeakel in a mandamus petition filed with the Fifth Circuit. The mandamus petition sought to overturn this Court's order regarding the depositions of Andrew Rosales and Sharon Deutsch. In that petition, Mr. Rosales made the following statements about this Court:

- "*In a fit of anger*, the Magistrate ordered depositions of both non-parties to occur. Part of the reasoning was based on improper and false statements given by the defense counsel. *Rather than research the issue, the Magistrate became angry* and ordered the depositions of two non-parties to the case."[19]

- "*The Magistrate did not research the issue nor direct his clerks to research the topic*. Rather, *the Magistrate became angry* after the Plaintiff's counsel would not disclose confidential settlement agreements from other cases. *In a fit of anger*, Magistrate Mark Lane then ordered the deposition of the brother of the Plaintiff's attorney and the wife of the Plaintiff."[20]

---

[17] *Id.*
[18] *Id.*
[19] *In re Jon Deutsh* [*sic*], Petition for Writ of Mandamus, p. 10 (emphasis added), attached hereto as Exhibit 6.
[20] *Id.* at 14 (emphasis added).

- "*The Magistrate was unaware of the law and rather than conduct research on the issue*, the Magistrate made an incorrect decision."[21]

- "*In a fit of anger*, the Magistrate then ordered the depositions of the two non-parties: The brother of the Plaintiff's counsel and the wife of the Plaintiff."[22]

Likewise, Mr. Rosales also criticized Judge Yeakel for allegedly failing to research the law:

> "An appeal was made to the District Court. However, *the District Court failed to research the issue* and only provided a half-paragraph opinion without citing any precedent or caselaw."[23]

To state the obvious, Mr. Rosales could not possibly have known how much "research" this Court or Judge Yeakel performed. He lacked any factual basis for those statements. His statements were "false statements of material fact," and thus violated Rule 3.03(a)(1).[24] Further, because Mr. Rosales made the statements impugning the integrity of judges[25] without any factual basis and "with reckless disregard as to [the] truth or falsity" of the statements, he violated Rule 8.02.[26]

---

[21] *Id.* at 27 (emphasis added).

[22] *Id.* at 27-28 (emphasis added).

[23] *Id.* at 29 (emphasis added).

[24] *See* Tex. Disciplinary R. Prof'l Conduct R. 3.03(a)(1) (prohibiting lawyers from making false statements of material fact to judges); *cf.* R. 8.04(a)(3) (prohibiting a lawyer from engaging in deceit, fraud, dishonesty, or misrepresentation).

[25] Judicial duties include being faithful to the law, and respectful and courteous toward lawyers and others. *See* Code of Conduct of United States Judges, Canon 3(A)(1) ("A judge should be faithful to, and maintain professional competence in, the law and should not be swayed by partisan interests, public clamor, or fear of criticism."); 3(A)(3) ("A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity.").

[26] Tex. Disciplinary R. Prof'l Conduct R. 8.02(a) ("A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge[.]"); *see also Fla. Bar v. Ray*, 797 So. 2d 556, 559 (Fla.

These false and unsupported accusations should be sanctioned under both Rule 11[27] and this Court's inherent power.[28]

### F. Unethical settlement practice in restricting the right to practice law

Mr. Rosales violated Texas Disciplinary Rule of Professional Conduct 5.06(b) by "participat[ing] or making . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement . . . ."[29] Specifically, before the August 3, 2016 hearing,

---

2001), *cert denied*, 535 U.S. 930 (2002) (affirming discipline of a lawyer for statements impugning a judge's fairness, integrity, and veracity, in violation of Model Rule 8.2(a); holding that the lawyer had no objectively reasonable factual basis for statements). Mr. Rosales also violated the Texas Lawyer's Creed, art. IV ("Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack."); art. IV.1 ("I will always recognize that the position of judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol."); art. IV.2 ("I will conduct myself in Court in a professional manner and demonstrate my respect for the Court and the law."); art. IV.5 ("I will not engage in any conduct which offends the dignity and decorum of proceedings.").

[27] Fed. R. Civ. Proc. R. 11(b)(3) (providing that by signing, filing, or otherwise presenting a pleading, motion, or other paper, a lawyer certifies to the best of his "knowledge, information, and belief, formed after a reasonable inquiry, that "the factual contentions have evidentiary support").

[28] *See, e.g.*, *In re Moity*, 320 F. App'x 244, 249–50 (5th Cir. 2009) (affirming a one-year suspension of a lawyer as a sanction in part for "impugning the integrity of two federal judges in a prior brief" before the Fifth Circuit by accusing the court of violating the Code of Judicial Conduct); *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 F. App'x 324, 333 (5th Cir. 2011) (affirming sanctions against a lawyer for "using filings and other court communications to attack the judge personally and repeatedly in ways unrelated to the matter the filings regard," including "call[ing] the judge incompetent, corrupt . . . [stating] that he never should have been confirmed, and declar[ing] him 'worthy of the contempt of all United States citizens . . . and unworthy of the respect of educated, free men'"); *In re Zeno*, 504 F.3d 64, 65 (1st Cir. 2007) (affirming a three-month suspension of a lawyer based on the lawyer's disrespectful submissions to court, in which the lawyer repeatedly made unfounded accusations that various judges were guilty of dishonesty, partiality, stupidity, and potential criminality); *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 120 (2d Cir. 2000) (imposing sanctions under Federal Rule of Appellate Procedure 38 in part for making "outrageous and groundless personal attacks upon the Bankruptcy Judge, Trustee, and . . . the District Court").

[29] Texas Disciplinary Rule of Professional Conduct 5.06(b) states that "[a] lawyer shall not participate in offering or making . . .  an agreement in which a restriction on the lawyer's right to

Mr. Rosales proposed a settlement of some of Plaintiff's pending lawsuits against Mr. Harrington's clients, and that settlement proposal included this provision: "Plaintiff and myself [Mr. Rosales] agree not to sue the Defendants ever again."[30]

Mr. Rosales included similar language in a proposed settlement agreement with Hwy 290 Venture JSM, L.P. ("Hwy 290"), another defendant that Mr. Rosales sued for Mr. Deutsch.[31] Mr. Rosales's proposed language read: "Deutsch, and his attorney Omar W. Rosales, further represent that during their lifetimes, they will never again file any type of legal proceeding or claim against Hwy 290 Venture JSM, L.P." Hwy 290 and its counsel refused to agree to that language in the settlement agreement. Presumably Mr. Rosales has proposed or used this improper language systematically for his entire ADA docket.

Mr. Rosales's proposed settlement language clearly violates the Rule 5.06(b) prohibition against a lawyer offering to restrict his right to practice as part of a settlement.[32] This conduct also merits sanctions.[33]

---

practice is part of the settlement of a suit or controversy . . . ." In relevant part, Model Rule 5.6(b) is virtually identical to the Texas Rule.

[30] *See* Excerpts from August 2, 2016, email from Omar Rosales to Jason Panzer, attached as Exhibit 7.

[31] *See John Deutsch v. Hwy 290 Venture JSM, L.P.,* Cause No. 1:16-CV-95-SS, In the United States District Court for the Western District of Texas.

[32] *See also* ABA Comm. on Ethics and Prof. Resp., Formal Op. 93-371 (1993) (interpreting ABA Model Rule of Professional Conduct 5.6(b)).

[33] A federal court may sanction attorneys for violations of the state code of professional conduct. *See In re Deepwater Horizon*, 2016 WL 3126450, at *3, *11 (5th Cir. 2016) (upholding sanctions for violations of the Louisiana Rules of Professional Conduct); *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 341 (5th Cir. 1993) (holding that a federal court may hold attorneys accountable to the state code of professional conduct); *United States v. Nolen*, 472 F.3d 362, 371

## G. Fee-sharing with a non-lawyer

Plaintiff Deutsch and Mr. Rosales have made statements and engaged in conduct that raise questions concerning whether improper fee divisions have occurred in these cases.

Mr. Deutsch has testified that he receives part of the settlements in his ADA cases.[34] As discussed below, the current record is unclear whether another non-lawyer, Andrew Rosales, is participating in a fee division.

Texas Disciplinary Rule of Professional Conduct 5.04(a) is clear: a lawyer must not divide fees with a non-lawyer except in three specific instances:

(a) *A lawyer or law firm shall not share* or promise to share *legal fees with a non-lawyer*, except that:

(1) an agreement by a lawyer with the lawyer's firm, partner, or associate, or a lawful court order, may provide for the payment of money, over a reasonable period of time, to the lawyer's estate to or for the benefit of the lawyer's heirs or personal representatives, beneficiaries, or former spouse, after the lawyer's death or as otherwise provided by law or court order;

---

(5th Cir. 2006) ("Courts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do.").

[34] *Deutsch v. Henry*, 1:15-CV-15-490-LY, February 18, 2016 Deposition of Jon Deutsch at 22, attached as Exhibit 8. At the June 26, 2016 hearing, Mr. Rosales gave evasive, non-responsive answers to this Court concerning the fee-division arrangement with Plaintiff Deutsch: "THE COURT: Are you splitting these fees with him? MR. ROSALES: I'm not going to go into the confidential settlement agreements. THE COURT: I'm not asking you about the confidential settlement agreements. I'm asking, are you splitting fees with your client? MR. ROSALES: Your Honor, I'm not going to talk about confidential settlements." Transcript of May 26, 2016 Motion Hearing Before the Honorable Mark Lane at 43, attached as Exhibit 9. Those evasive answers suggest that Mr. Rosales had something to hide.

(2) a lawyer who undertakes to complete unfinished legal business of a deceased pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; and

(3) a lawyer or law firm may include non-lawyer employees in a retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

(Emphasis added.) Plaintiff has suggested that Rule 5.04(a) does not prohibit a fee division, citing Texas Professional Ethics Committee Opinion 588. Defendants submit that Plaintiff is incorrect for three reasons.

*First*, Plaintiff has failed to cite any court decision holding that the prohibition in Rule 5.04(a) does not apply to a fee-sharing between a client-plaintiff and the lawyer, such as Plaintiff Deutsch and Mr. Rosales. Instead, Plaintiff's argument—based solely on PEC Opinion 588—is flatly inconsistent with the language of Rule 5.04(a). Rule 5.04(a) is simple and unequivocal: "A lawyer . . . shall not share . . . legal fees with a non-lawyer . . . ." Rosales is a lawyer, Deutsch is a non-lawyer—the Rule prohibits any fee division between the two. None of the three exceptions stated in subparagraphs (1) – (3) of Rule 5.04(a) apply here. On its face, the Rule flatly prohibits a lawyer (Rosales) from dividing a fee with a non-lawyer—whether the non-lawyer is (a) a client (Deutsch), or (b) Rosales's brother (Andrew).[35]

---

[35] Similarly, ABA Model Rule 5.4 provides that a "lawyer . . . shall not share legal fees with a nonlawyer" except for the same inapplicable exceptions. The ABA prohibition is longstanding. Canon 34 of the ABA Canons of Ethics, adopted in 1928, contained a flat prohibition on any fee division between a lawyer and any non-lawyer: "No division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility." The ABA Code of Professional Conduct also prohibited fee-divisions with non-lawyers, with certain specified exceptions inapplicable in this case. *See* ABA Code of Professional Conduct, DR 3-102(A) ("A lawyer or law firm shall not share legal fees with a non-lawyer . . . ."); EC 3-8 ("Since a lawyer

Opinion 588 focused on whether the particular statute in issue awarded the fees to the *client* or to the *lawyer*. The Rule does not state any such distinction or exception. The Rule does not distinguish who first *receives* the attorney's fee under a particular statute; the Rule focuses solely on *whether* an attorney's fee is *shared*. The Rule expressly states three exceptions, but no others. A traditional, logical rule of statutory construction is *expressio unius est exclusio alterius.* Rule 5.04(a) expresses three exceptions, and therefore, logically, the Rule excludes any other exception. Thus, Rule 5.04(a) does not authorize any exception to the fee-sharing prohibition based on whether the statutorily designated recipient of a legal fee is the client or the lawyer.

Moreover, the Texas Supreme Court has made clear that under Texas law, the language of a Disciplinary Rule controls over any PEC opinion. As the Court stated recently in *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez,*[36] PEC opinions are "advisory" only and subordinate to the Rules. The "[o]pinions of the Professional Ethics Committee *carry less weight than do the disciplinary rules.*"[37] Thus, the prohibition in

---

should not aid or encourage a lawman to practice law, he should not . . . share legal fees with a layman.").

[36] 467 S.W.3d 494, 505 (Tex. 2015).

[37] *Id.* (Emphasis added.) In *Royston*, the Court held that the supposed requirements set out in PEC Opinion 586 concerning what a lawyer should advise a prospective client of before having the client enter an agreement providing for mandatory arbitration of attorney-client disputes were not binding on Texas lawyers as a matter of substantive law. Other federal and state decisions in Texas recognize that PEC opinions are not binding on any court. *See, e.g., Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*, 70 F. Supp. 3d 782, 786 (E.D. Tex. 2014) (noting that PEC "[e]thics opinions do not have the force of law" and are "advisory only," and expressly rejecting the ruling and the rationale of PEC Opinion 610 concerning contractual liens in attorney-client contracts); *Gray v. Noteboom*, 159 S.W.3d 750, 752-53 (Tex. App.—Fort Worth 2005, pet. denied) ("In the instant case, there appears to be no question about the fact that the partnership agreement is contrary to the Ethics Committee opinion . . . . It appears the ethics opinion, in an

Rule 5.04(a) controls over the "advisory" opinion in PEC Opinion 588, which does not bind any court. In short, the Rule rules; the advisory opinion yields. Any fee sharing between a lawyer and non-lawyer violates Rule 5.04(a), unless it meets one of the three stated exceptions.

*Second*, in the particular circumstances of the present cases, the apparent fee-sharing arrangement between Plaintiff Deutsch and Mr. Rosales violates long-established public policy in Texas.[38] Plaintiff Deutsch is a serial litigant, having filed some 400

---

effort to be fair to the withdrawing attorney, is not mindful of the rights of the firm or attorney remaining. We hold that a violation of Opinion 459 of the Texas Professional Ethics Committee, under the circumstances of this case, is not contrary to public policy and should not be used as a procedural weapon."); *Stonewall Financial Services Corp. v. Corona*, 2012 WL 4087642, at *3 (Tex. App.—Texarkana 2012, no pet.) ("'[Texas PEC] opinions are concerned with matters of attorney discipline and are advisory rather than binding.' . . . We do not need to determine (nor do we determine) whether the cited ethics opinion was violated. Because the rulings of the [PEC] are binding on neither the trial court nor on us, we do not find any situation which would have deprived the trial court of jurisdiction."); *Labidi v. Sydo*, 287 S.W.3d 922, 929 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (stating that "opinions of the Texas Ethics Commission [sic] are advisory rather than binding"); Tex. Gov't Code § 81.092(a) ("Committee opinions are not binding on the supreme court").

[38] Many Texas decisions recognize that the Disciplinary Rules have the same effect as statutes and express Texas public policy, and that a contract in violation of the Disciplinary Rules is unenforceable as against public policy. *See, e.g.*, *Counsel Financial Services, LLC v. Leibowitz*, 2013 WL 3895331, at *7 (Tex. App.—Corpus Christi 2013, pet. denied) ("[A] court may deem the disciplinary rules to be an expression of public policy, so that a contract violating them is unenforceable as against public policy. . . . In this regard, we note that there are several cases in which Texas courts have concluded that agreements violating the Disciplinary Rules were unenforceable and void as against public policy."); *Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 613 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("The Texas Disciplinary Rules of Professional Conduct do not define standards for civil liability and do not give rise to private claims. Nonetheless, a court may deem these rules to be an expression of public policy, so that a contract violating them is unenforceable as against public policy."); *In re Zuniga*, 332 B.R. 760, 776 n. 5 (Bankr. S.D. Tex. 2005) ("In Texas, the State Bar rules are treated as statutes."); *Shields v. Texas Scottish Rite Hosp. for Crippled Children*, 11 S.W.3d 457, 459 (Tex. App.—Eastland  2000, pet. denied) ("[D]isciplinary rules are quasi-statutory and . . .

cases. Mr. Rosales is a serial litigator: he represents Deutsch in all of those cases. Mr. Deutsch and Mr. Rosales needlessly sued hundreds of small-business owners over alleged hyper-technical ADA violations; they have sued even when the property owners would have voluntarily remedied the alleged violations if simply asked to do so. Mr. Deutsch and Mr. Rosales use coercive litigation and the threat of high litigation costs to force settlements of lawsuits that never should have been filed.[39]

Texas has one of the strongest public policies in the nation against barratry. Indeed, barratry has been a crime in Texas since 1876.[40] Texas also has civil and disciplinary prohibitions against barratry.[41] Common law defines barratry as "frequently exciting and stirring up suits."[42] That is exactly what Mr. Deutsch and Mr. Rosales have done hundreds of time. The essence of their *modus operandi* is to profit from "frequently stirring up suits."

---

the rules evidence the public policy of this State. Texas courts have consistently used attorney disciplinary rules to determine public policy.").

[39] *Cf.* Fed. R. Civ. P. 11(b)(1) (making sanctionable any pleading that is filed or advocated for the purpose of "needlessly increas[ing] the cost of litigation").

[40] *See* Act approved Aug. 21, 1876, 15th Leg., R.S., ch. 135, § 1, 1876 Tex. Gen. Laws 227, 227, reprinted in 8 H.P.N. Gammel, The Laws of Texas 1822-1897, at 1063, 1063 (Austin, Gammel Book Co. 1898).

[41] *See* Tex. Gov't Code §§ 82.065 and 82.0651; Tex. Disciplinary R. Prof'l Conduct R. 8.04(a)(9), 7.03, and 7.06.

[42] *McCloskey v. San Antonio Traction Co.*, 192 S.W. 1116, 1118 (Tex. Civ. App.—1917, writ ref'd) (quoting Sir William Blackstone, *Commentaries on the Laws of England* (1765-1769)); *see also Hunsinger v. Sko Brenner Am., Inc.*, 2014 WL 1462443, at *13 (N.D. Tex. 2014) ("'Barratry' . . . means 'vexatious incitement to litigation, especially by soliciting potential legal clients.'"); *Moore v. Morales*, 843 F. Supp. 1124, 1125 (S.D. Tex. 1994) ("'Barratry' refers to the offense of . . . exciting and stirring up quarrels and suits, either at law or otherwise."), *rev'd on other grounds*, 63 F.3d 358 (5th Cir. 1995).

Given that illegitimate purpose and course of conduct, the well-established anti-barratry public policy in Texas strongly supports the enforcement of the Rule 5.04(a) prohibition against Mr. Rosales's sharing of fees with Plaintiff Deutsch.[43]

*Third*, even if the fee division between Mr. Rosales and Mr. Deutsch were permissible, the evidence suggests that Mr. Rosales's brother, Andrew, is also involved in the joint enterprise.[44] The question of whether Andrew Rosales shares in the fees remains unanswered at present because Respondents have fought desperately to prevent the deposition of Andrew Rosales. This Court ordered that deposition to proceed.[45] Mr. Deutsch and Mr. Rosales, however, still failed to permit the deposition of Andrew Rosales.[46]

### H. Mr. Rosales's conflicts of interest

The Fifth Circuit has recognized "a district court's inherent authority to take measures against conflicts of interest when they arise in connection with any proceeding before it."[47] Further, the Fifth Circuit has stated that a district court must directly address

---

[43] Similar policies support the traditional prohibitions against fee-sharing between lawyers and non-lawyers. *See, e.g.*, Roy D. Simon, Jr., *Fee Sharing Between Lawyers and Public Interest Groups*, 98 Yale L.J. 1069, 1105 (1989) (noting "seven deadly sins" that the fee-sharing prohibition guards against, including "stirring up litigation," "the unauthorized practice of law," "excessive fees," "referrals to incompetent lawyers," and "unethical litigation practices").

[44] *See Deutsch v. Clark*, 1:16–CV–088–LY, Defendants' Response to Plaintiff's Motion to Quash Deposition Notices of Andrew Rosales and Sharon Deutsch (Dkt. # 21), at 6-9.

[45] *See Deutsch v. Clark*, 1:16–CV–088–LY, May 27, 2016 Order, (Dkt. # 30), at 4-5.

[46] *See Deutsch v. Clark*, 1:16–CV–088–LY, Defendants' Opposed Motion to Compel Plaintiff's Witnesses Sharon Gil Deutsch and Andrew Rosales to Attend Deposition (Dkt. # 56).

[47] *United States v. Roark*, 288 F. App'x 182, 186 (5th Cir. 2008) (citing *Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976)).

any unethical conduct occurring before the court.[48] From the developments in this case thus far, Defendants suggest that four actual or potential conflicts of interest merit this Court's attention.

*First*, Defendants are concerned about the potential conflict of interest in the impending sanctions hearing. If this Court finds that sanctionable conduct occurred, the Court must make a culpability determination concerning the relative responsibility of Plaintiff Deutsch and his lawyer, Mr. Rosales.[49] But Mr. Deutsch did not appear at the last hearing before this Court on August 3; nor did he appear at the last hearing before Judge Austin. Mr. Deutsch's failure to appear before Judge Austin has resulted in a contempt show-cause hearing, which is set for August 17.[50]

In some instances, independent counsel is necessary at the sanctions hearing for a party that is potentially subject to sanctions.[51] Ethically, the lawyer here, Mr. Rosales,

---

[48] *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (holding that a "[d]istrict court *is obliged* to take measures against unethical conduct occurring in connection with any proceeding in front of it") (emphasis added); *see also In re American Airlines, Inc.*, 972 F. 2d 605 (5th Cir. 1992) (citing *Woods* for same); *Hill v. Hunt*, 2008 WL 4108120, at *2 (N.D. Tex. 2008) (stating that "it is the Court's business and responsibility to address such conflicts [of interest]"); *cf.* Tex. Disciplinary R. Prof'l Conduct R. 1.06 cmt. 17 ("Raising questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility.").

[49] *See Smith Int'l, Inc. v. Texas Commerce Bank, N.A.,* 844 F.2d 1193, 1201-02 (5th Cir. 1988) (holding that a court must determine the relative culpability of each person involved in the sanctionable conduct and must apportion sanctions among the offending persons in a manner that reflects the extent and result of each person's individual violations); Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse*, § 16(E)(1)(a), 327 (5th ed. 2013) ("Sanctions should be allocated among the persons responsible for presentation of the offending pleading, written motion or other paper, based upon their relative culpability.") (citations omitted).

[50] *Deutsch v. Throckmorton*, 1:16-CV-00112-SS, Order to Show Cause [Dkt. # 39].

[51] *See* Joseph, *supra* note 51, § 17(A)(10), at 360 ("When both lawyer and client are the subject of sanctions proceedings, there is a conflict of interest between lawyer and client, and the client

cannot both "blame" his client for sanctionable misconduct and simultaneously defend his client.

Defendants submit that at the outset of (or before) any sanctions hearing, the Court should inquire concerning whether this potential conflict of interest has been resolved properly.

*Second*, as discussed in Section II.F above, Mr. Rosales has violated Rule 5.06(b) of the Texas Disciplinary Rules of Professional Conduct by offering and entering into settlement agreements that restrict his right to practice law. Basically, Mr. Rosales offers and agrees not to sue the settling defendant in the future—a clear violation of Rule 5.06(b). Presumably this is Mr. Rosales's standard practice in his entire ADA docket of hundreds of cases in the Western District of Texas, as well as in cases in the Southern District of Texas.[52]

By violating that ethical obligation, Mr. Rosales has created potential liability exposure to his client, Mr. Deutsch. In the landmark decision of *Burrow v. Arce*,[53] the

---

must be separately represented."); *Garner v. Cuyahoga County Juvenile* Court, 554 F.3d 624, 636 (6th Cir. 2009) ("Courts must be particularly careful in conducting hearings to determine whether sanctions should be imposed against plaintiffs and their attorneys for bringing frivolous claims. These situations are especially prone to raise conflicts of interest because each has an incentive to blame the other for bringing the frivolous claims."); *Whiting v. Lacara*, 187 F.3d 317, 323 (2d Cir. 1999) (stating that "an attorney who continues to represent a client despite the inherent conflict of interest in his so doing [due to possible sanctions] risks an ethical violation").

[52] Court records reflect that Mr. Rosales filed approximately 49 lawsuits in the Southern District of Texas on behalf of Juan Tovar alleging similar violations of the ADA against businesses in Harlingen and Brownsville areas of Texas. *See* PACER search results for attorney Omar Rosales from the Southern District of Texas from July 2014 through February 2015, attached hereto as Exhibit 10.

[53] 997 S.W.2d 229 (Tex. 1999) (adopting the fee-forfeiture standard set out in what is now § 37 of the Restatement (Third) of the Law Governing Lawyers, which provides in relevant part: "A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some

Texas Supreme Court recognized that a lawyer who commits a "clear and serious" violation of a duty owed to a client is potentially subject to forfeiting to the client some or all of the lawyer's fee. When a lawyer violates his ethical obligation and fiduciary duty, he must disclose and confess those violations to his client.[54] When a lawyer violates his professional duties owed to the client in a manner that gives rise to a potential liability claim, and then continues to represent the client in the same matter, the conflict of interest is plain. As discussed above, Mr. Rosales apparently is sharing fees with Plaintiff Deutsch. However, based on the violation of Rule 5.06(b), Mr. Rosales may be subject to forfeiting those fees. Those issues appear to raise at least a potential conflict of interest.

*Third*, as discussed in Section II.G above, Mr. Rosales may be violating Rule 5.04(a), which prohibits sharing fees with a non-lawyer (his client, Mr. Deutsch). As explained in the discussion of the Rule 5.06(b) violation above, that violation also may lead to a fee forfeiture. Additionally, the Disciplinary Rules have the force and effect of statutes and express Texas public policy.[55] Therefore, for Mr. Rosales to receive (or

---

or all of the lawyer's compensation for the matter."); *see also* Restatement § 37 cmt. c (stating that the sources of "duty"—violation of which can lead to fee forfeiture—include "the requirements of an applicable lawyer code"). The plaintiffs in *Burrow* alleged violations of several disciplinary rules, one of which was Rule 5.06(b)—the rule that Mr. Rosales violated. *See id.* at 232.

[54] *See* Tex. Disciplinary R. Prof'l Conduct R. 1.03(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); *Fleming v. Curry*, 2013 WL 4429905, at *4 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("As a fiduciary, an attorney has an affirmative duty to make a full and accurate confession of all his fiduciary activities . . . and mistakes."); *Jackson Law Office P.C. v. Chappell*, 37 S.W.3d 15, 22 (Tex. App.—Tyler 2000, pet. denied) (same).

[55] *See O'Quinn v. State Bar of Tex.*, 763 S.W.2d 397, 399 (Tex. 1988) (stating that "our disciplinary rules should be treated like statutes"); *Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 613 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (recognizing that courts have used the disciplinary rules as a measure of public policy); *Baron v. Millinax,*

claim) any fee would potentially violate Texas law. Under Rule 1.04(a), a lawyer must not charge or attempt to collect an "illegal fee"[56]—an improper fee sharing, in violation of Rule 5.04(a), would result in an "illegal fee." Again, the ongoing, potential conflict of interest between Mr. Rosales and Plaintiff Deutsch is evident.

*Fourth*, a basic conflict of interest may exist between Plaintiff Deutsch and Mr. Rosales concerning whether to file suit and seek a recovery of legal fees. In Plaintiff's Motions to Dismiss, filed in several cases, Plaintiff has expressed a desire to dismiss claims because he achieved his "objective: to bring the property into compliance with the Americans with Disabilities Act of 1990 and the follow-on attendant regulations of 2010."[57] If Plaintiff's only goal is compliance—as opposed to a recovery of money in the form of "attorney's fees"—in many instances that goal can be achieved (and often could have been achieved in this Deutsch-Rosales docket) without filing suit. And if Plaintiff's goal was only compliance, why did he file suit in the first place, instead of sending demand letters (or even calling the property owner on the phone to mention the alleged ADA issue)? Many of the defendants that Plaintiff (through Mr. Rosales) has sued would have voluntarily made the minor revisions that allegedly were necessary to attain ADA compliance, in order to avoid the costs and attorney's fees required in this

---

*Wells, Mauzy & Babb, Inc.,* 623 S.W.2d 457, 461 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.) (holding that the disciplinary rules evidence the public policy of Texas).

[56] Tex. Disciplinary R. Prof'l Conduct 1.04(a) ("A lawyer shall not enter into an arrangement for, charge, or collect an illegal fee . . . .").

[57] *See, e.g., Deutsch v. Clark*, 1:16-CV-088-LY, Plaintiff's Opposed Motion to Dismiss [Dkt. # 44] at 2-3; *Deutsch v. Henry*, 1:15-CV-490-LY, Plaintiff's Opposed Motion to Dismiss [Dkt. # 65] at 2; *Deutsch v. Throckmorton*, 1:16-CV-112-SS, Plaintiff's Opposed Motion to Dismiss [Dkt. # 12] at 2.

litigation. For those property owners who would have voluntarily modified their properties to remedy minor ADA violations, Mr. Rosales's decisions and actions to file suit delayed achieving Mr. Deutsch's stated goal: compliance. Those owners had to spend time and money on lawyers instead of making minor modifications.

But Mr. Rosales has a different interest: to obtain attorney's fees. His standard procedure is to file suit without giving any pre-suit demand or opportunity for the defendant to remedy any alleged minor violations. That fundamental, potential conflict of interest appears to be at the heart of Mr. Rosales's business model in pursuing this vast ADA docket.[58] Again, Defendants suggest that, at a minimum, that potential conflict of interest merits Court inquiry and attention.

## I. Opposing Defendant's Motion to Substitute

Plaintiff and Mr. Rosales violated Rule 11(b)(1) and Local Rule AT-4(a) by opposing Defendant's Motion to Substitute Counsel in *Deutsch v. Draker Enterprises, Inc.*, Cause No. 1:15-CV-807-LY.[59] The purposes of the opposition were to harass Mr. Harrington, cause unnecessary delay, and needlessly increase the cost of litigation.[60] As part of the Motion to Substitute, Mr. Harrington requested $300 in attorney's fees "from Plaintiff's attorney for opposing this routine motion without good cause . . . ."[61] In

---

[58] *Cf. Bullard v. Chrysler Corp.*, 925 F. Supp. 1180 (E.D. Tex. 1996) (holding that conflict of interest existed under Texas Disciplinary Rule 1.06(b)(2) between client's interest and her lawyer's economic interest in pursuing other litigation).

[59] *Deutsch v. Draker Enterprises, Inc.*, Cause No. 1:15-CV-807-LY, Opposed Motion to Substitute Counsel, Dkt. # 8; Response in Opposition to Motion to Substitute Counsel [Dkt. # 10].

[60] *See* Rule 11(b)(1).

[61] *Deutsch v. Draker Enterprises, Inc.*, 1:15-CV-807-LY, Opposed Motion to Substitute Counsel [Dkt. # 8] at 1.

granting the motion, Judge Yeakel stated that Mr. Harrington's request for attorney's fees "remains pending before the court at this time."[62] The conduct of Plaintiff and Mr. Rosales in opposing the Motion to Substitute merits sanctions.

## J.  Violations of the Disciplinary Rules

The Fifth Circuit has repeatedly held that inherent-power sanctions are appropriate when a lawyer violates rules of ethics.[63] Evidence in the record appears to indicate that Mr. Rosales has violated several of the Texas Disciplinary Rules of Professional Conduct:[64] Rules 3.01, 3.02, 3.03(a)(1), 3.03(a)(5), 3.04(b), 3.04(d), 5.04(a), 5.06(b), 8.04(a)(2), 8.04(a)(3).

**Rule 3.01**: Rule 3.01 provides that "[a] lawyer shall not . . . assert or controvert an issue . . . , unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous." As discussed above, and as detailed in Exhibit 1, Mr. Rosales made well over 100 false and abusive statements concerning defense counsel, Jim Harrington,

---

[62] *Deutsch v. Draker Enterprises, Inc.*, 1:15-CV-807-LY, Order, (Dkt. # 16) at 1.

[63] *See In re Deepwater Horizon*, 2016 WL 3126450, at *3, *11 (5th Cir. 2016) (affirming sanctions for violations of the Louisiana Rules of Professional Conduct); *U.S. ex rel. Holmes v. Northrop Grumman Corp*., 2016 WL 1138264, at *3 (5th Cir. 2016) (affirming a trial court's order disqualifying an attorney from serving as a relator in a qui tam suit as a sanction for violations of ethical rules; holding that "[d]istrict courts are afforded discretion in penalizing ethical violations"); *In re Zuniga*, 332 B.R. 760, 788 (Bankr. S.D. Tex. 2005) (affirming sanctions for violations of the Texas Disciplinary Rules of Professional Conduct; "An attorney may be sanctioned . . . for violations of the Disciplinary Rules of Professional Conduct."); *Dyll v. Adams*, 1997 WL 222918, at *1 (N.D. Tex. 1997) (holding that "[t]his court has an obligation to respond appropriately to unethical conduct occurring in connection with the proceedings before it [and] has the inherent power to discipline counsel for ethical violations"); *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 341 (5th Cir. 1993) (holding that "a federal court may . . . hold attorneys accountable to the state code of professional conduct").

[64] Local Rule AT-7(a) provides that members of the bar of this Court "must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct, . . . which are hereby adopted as the standards of professional conduct of this court."

alleging among other offensive claims that:

- Mr. Harrington believes "acceptable to refer to Hispanics as toads, sapos, snitches, and South American Pieces of Shit."[65]

- Mr. Harrington used "racist and anti-Semitic terms against minorities (and then claiming it is okay because he is married to a minority)."[66]

- If Mr. Harrington "is hearing angels, he needs medical treatment immediately."[67]

- Mr. Harrington "is in a fugue state and doesn't really know what is going on."[68]

Mr. Rosales's primary, stated basis for making frivolous contentions is that Mr. Harrington referred to him as a "sapo." Mr. Harrington did not. He merely forwarded (inadvertently) an email that a non-lawyer staff member had written. In any event, the "issues" that Mr. Rosales has raised by those offensive, insulting allegations plainly do not have a basis that is, as required by Rule 3.01, "not frivolous."

**Rule 3.02**: Rule 3.02 requires that "a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the case." In the current matters, Mr. Rosales violated Rule 3.02 in four ways:

(1) Mr. Rosales filed boilerplate, copycat lawsuits over what were often technical or inconsequential alleged ADA violations. Then he threatened legal expenses of up to $100,000 if the defendant did not settle for $7,000. (With some 400 lawsuits, the total recovery would have been approximately $2.8 million, if Mr. Rosales obtained that settlement demand in each case.) In many instances, the defendants would have voluntarily remedied the alleged deficiencies without any lawsuit. Mr. Rosales has "unreasonably increase[ed]" the costs in these cases.

---

[65] Exhibit 1, ¶¶ 8—12.
[66] *Id.* at ¶¶ 18—23.
[67] *Id.* at ¶¶ 30—35.
[68] *Id.* at ¶¶ 36—41.

(2) Mr. Rosales has "unreasonably increase[d] . . . burdens of the case" on Mr. Harrington by making over 100 false, abusive statements about him.

(3) Mr. Rosales unreasonably increased the costs and burdens of the case by opposing Mr. Harrington's routine Motion to Substitute Counsel in *Deutsch v. Draker Enterprises, Inc.*, Cause No. 1:15-CV-807-LY.[69] Mr. Rosales even filed written opposition to that routine motion.[70]

(4) Mr. Rosales unreasonably increased the costs and burdens of the case by filing the Motion for Separate Hearing in *Deutsch v. Clark*, 1:16-CV-88-LY, based on the improper, abusive criminal-stalking proceedings that Mr. Rosales filed and pursued in state court.[71]

**Rule 3.03(a)(1)**: Rule 3.03(a)(1) prohibits a lawyer from making "a false statement of fact . . . to a tribunal." As discussed above, Mr. Rosales has made many false factual statements to this Court.[72] Those false statements of fact violate Rule 3.03(a)(1).

**Rule 3.03(a)(5) and 3.04(b)**: Rule 3.03(a)(5) prohibits a lawyer from "offer[ing] or us[ing] evidence that the lawyer knows to be false." Rule 3.04(b) prohibits a lawyer from "falsify[ing] evidence."

As discussed above, as part of Plaintiff's Response in Opposition to [Defendants'] Motion to Compel and Motion for Sanctions,[73] Mr. Rosales attached a fabricated email

---

[69] *Deutsch v. Draker Enterprises, Inc.*, 1:15-CV-807-LY, Opposed Motion to Substitute Counsel, [Dkt. # 8].
[70] *Deutsch v. Draker Enterprises, Inc.*, 1:15-CV-807-LY, Response in Opposition to Motion to Substitute Counsel [Dkt. # 10].
[71] *See Deutsch v. Clark*, 1:16-CV-088-LY, Motion for Separate Hearing [Dkt. # 25].
[72] *See* Exhibit 1, ¶¶ 1—113.
[73] *Deutsch v. Clark*, 1:16–CV–088–LY [Dkt. # 62-4].

that he claimed that he had sent from his email address (talon_eye@yahoo.com) to Mr. Harrington's email address (jch@utexas.edu) on June 22, 2016 at 3:25 p.m.[74]

**Rule 3.04(d)**: Rule 3.04(d) provides that a lawyer shall not "knowingly disobey . . . an obligation under the standing rules of or a ruling by a tribunal . . . ."

As discussed above, Mr. Rosales violated the requirements of Local Rule AT-4(d), which requires that "[a] lawyer should treat all other lawyers . . . courteously, not only in court, but also in other written and oral communications." Mr. Rosales also violated Local Rule AT-(5)(e), which requires that "A lawyer must avoid disparaging personal remarks or acrimony toward opposing counsel." Mr. Rosales violated Local Rules AT-4(d) and AT-5(e) by making over 100 disparaging statements concerning Mr. Harrington.[75] Additionally, Mr. Rosales violated Local Rule AT-4(f) by opposing Jim Harrington's Motion to Substitute Counsel in *Deutsch v. Draker Enterprises, Inc.*, Cause No. 1:15-CV-807-LY[76] and filing a written response to the motion.[77] As discussed above in Section II.I, Mr. Rosales had no valid purpose to opposing the Motion to Substitute other than to harass Mr. Harrington, cause unnecessary delay, and needlessly increase the cost of litigation.[78] Further, as discussed in Sections II.A-B, and II.D-E above, Mr. Rosales also violated the Rule 11 certification requirements.

---

[74] *See* Section II.B above.
[75] *See* Exhibit 1, ¶¶ 1-113.
[76] *Deutsch v. Draker Enterprises, Inc.*, 1:15-CV-807-LY, Opposed Motion to Substitute Counsel [Dkt. # 8].
[77] *Deutsch v. Draker Enterprises, Inc.*, 1:15-CV-807-LY, Response in Opposition to Motion to Substitute Counsel [Dkt. # 10].
[78] *See* Rule 11(b)(1).

**Rule 5.04(a)**: Rule 5.04(a) provides that "[a] lawyer shall not share . . . legal fees with a non-lawyer . . . ."

As discussed above in Section II.G, Mr. Rosales apparently is sharing fees with at least one non-lawyer—his client, Mr. Deutsch—and perhaps also with his brother Andrew Rosales in violation of Rule 5.04(a).[79]

**Rule 5.06(b)**: Rule 5.06(b) provides a lawyer from "participat[ing] in offering or making . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a suit or controversy . . . ."

As discussed above in Section II.F, Mr. Rosales proposed to settle some (or perhaps all) of his ADA cases with settlement language stating that "Plaintiff and myself agree not to sue the Defendants ever again." Mr. Rosales proposed similar language as part of the settlement of Mr. Deutsch's claims against Hwy 290 Venture JSM, L.P.[80] Those provisions violate the Rule 5.06(b) prohibition against a lawyer offering or agreeing to restrict his right to practice.[81]

**Rule 8.02(a)**: Rule 8.02(a) provides that a lawyer "shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning

---

[79] *See* discussion Section II.G, above.

[80] *See Deutsch v. Hwy 290 Venture JSM, L.P.,* Cause No. 1:16-CV-095-SS. The parties settled, but Mr. Rosales had proposed that the settlement agreement include the following provision: "Deutsch, and his attorney Omar W. Rosales, further represent that during their lifetimes, they will never again file any type of legal proceeding or claim against HWY 290 VENTURE JSM, L.P." Defendant Hwy 290 Venture JSM, L.P. (represented by Herring & Panzer, L.L.P.) refused to agree to that settlement provision.

[81] *See* Tex. Disciplinary R. Prof'l Conduct 5.06(b). *See also* ABA Comm. on Ethics and Prof. Resp., Formal Op. 93-371 (1993) (interpreting ABA Model Rule of Professional Conduct 5.6(b), which is in relevant part almost identical to Texas Disciplinary Rule 5.06); Restatement (Third) of the Law Governing Lawyers §13(2) cmt. c (2000).

the . . . integrity of a judge [or] adjudicatory official . . . ." As discussed above in Section II.E, Mr. Rosales made derogatory and unsupported allegations about this Court and about Judge Yeakel in Plaintiff's Petition for Writ of Mandamus. Those accusations violated Rule 8.02 by impugning the integrity of judicial decision-making in these cases and the judges' faithfulness to the law, as required by Canon 3(A)(1) of the Code of Conduct of United States Judges.

**Rule 8.04(a)(2) and 8.04(a)(4)**: Rule 8.04(a)(2) prohibits a lawyer from "commit[ting] a serious crime,[82] or commit[ting] any other criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects . . . ." Rule 8.04(a)(4) prohibits a lawyer from "engag[ing] in conduct constituting obstruction of justice . . . ."

Mr. Rosales's apparently fabricated email (Dkt. # 62-4) in *Deutsch v. Clark*, 1:16-CV-88-LY (the "fabricated email") constitutes obstruction of justice under Texas Penal Code § 37.09(a)(2). That section provides that a person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, the person "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding." Here, Mr. Rosales knew that an official proceeding (the lawsuit) was in progress, and presented the fabricated email to the court with knowledge of its falsity and with intent to affect the

---

[82] Rule 8.04(b) defines "serious crime" as including "barratry [and] any felony involving moral turpitude . . . ."

outcome of the official proceeding before the court.[83] Mr. Rosales's actions violated § 37.09(a)(2) of the Texas Penal Code. Consequently, Mr. Rosales violated Rules 8.04(a)(2) and 8.04(a)(4) warranting sanctions.

**Rule 8.04(a)(3)**: Rule 8.04(a)(3) prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ." As discussed above, Mr. Rosales has violated Rule 8.04(a)(3), including by the conduct and statements described in Sections II.A-C, F, and G above.

## III.   Sanctions

This Court has discretion to impose sanctions to address the egregious litigation misconduct in these cases by Plaintiff Deutsch and Attorney Rosales. Both the Court's inherent power[84] and Rule 11 provide a wide range of sanctions options, including:

- Fines.[85]
- An award of attorneys' fees and costs.[86]

---

[83] *See Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 235 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (affirming death-penalty sanctions in a sexual-discrimination case based on the plaintiff's presentation of a manufactured audiotape; stating that "Fabricating evidence is a third degree felony. TEX.PENAL CODE ANN. § 37.09(a) (Vernon 1997). An act so destructive of the integrity of our judicial process, such as the fabrication of physical evidence, deserves serious punishment. Such intentionally egregious behavior warrants punishment that places the guilty party in a worse position than that from which she began."); *Waldrop v. State*, 219 S.W.3d 531, 537 (Tex. App.—Texarkana 2007, no pet.) (affirming conviction of obstruction of justice under Texas Penal Code § 37.09(a)(2) for presenting false evidence in which the defendant made and presented an audiotape to police that contained false allegations by her daughters of sexual assault by defendant's former husband).

[84] *See generally* Joseph, *supra* note 51, § 28(A), (listing types of inherent power sanctions a court may impose).

[85] *See Carroll v. The Jaques Law Firm, P.C.*, 110 F.3d 290, 293 (5th Cir. 1997) (affirming a monetary fine as sanctions for, among other things, "offensive, threatening, and contumacious" language, including "by assessing fines of '$500 for each of the four times Jaques referred to Plaintiff's counsel as either an 'idiot' or an 'ass'; $1,000 for Jaques's suggestion during the deposition that Plaintiff's counsel 'ought to be punched in the g—damn nose'"); Joseph, *supra* note 51, § 3(B) (listing the "highest" federal monetary-sanctions awards, some totaling several million dollars).

- Denial or forfeiture of attorney's fees.[87]
- Dismissal with prejudice.[88]
- Disqualification of counsel.[89]
- Disciplinary action, including suspension from practice before the court and disbarment.[90]
- Requiring attendance at continuing-legal-education classes.[91]
- Referring counsel to appropriate disciplinary committee.[92]

---

[86] *See NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 706 (5th Cir. 1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (affirming the district court's imposition of attorney's fees under its inherent power when plaintiff litigated in bad faith and produced fraudulent testimony to the court); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988) ("[P]ursuant to its inherent power, a district court may award reasonable attorney's fees to the prevailing party when the losing party has acted in bad faith in actions that led to the lawsuit or in the conduct of the litigation."); *Sarco Creek Ranch v. Greeson*, 2016 WL 852781, at *11 (S.D. Tex. 2016) (imposing death penalty sanctions and awarding attorney's fees under the court's inherent power where plaintiff submitted fabricated evidence).

[87] *See Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1246 (11th Cir. 2009) (denying recovery of attorney's fees); *Fellheimer, Eichen & Braverman v. Charter Technologies, Inc.*, 57 F.3d 1215, 1229 (3d Cir. 1995) (denying recovery of $167,246.50 in attorney's fees).

[88] *See Tesco Corp. v. Weatherford, Int'l, Inc.*, 2014 WL 4244215, at *7 (S.D. Tex. 2014), *appeal dism'd*, 804 F.3d 1367 (5th Cir. 2015) (imposing death-penalty sanctions under the court's inherent power when a lawyer lied to the court about a witness's out-of-court testimony in order to gain an unfair advantage during litigation).

[89] *See Lelsz v. Kavanagh*, 137 F.R.D. 646 (N.D. Tex. 1991) (disqualifying an assistant attorney general from a case for conduct including violations of professionalism-creed standards); *Flaksa v. Little River Constr. Co.*, 389 F.2d 885 (5th Cir. 1968) (recognizing counsel-disqualification as a permissible inherent-power sanction); Joseph, *supra* note 51, § 28(B)(4) ("The courts have broad authority to discipline counsel for misconduct. That authority extends as far as suspension or disbarment from practice and includes the power to disqualify counsel from appearing in a litigation which he or she has conducted abusively.").

[90] *See Resolution Trust Co. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993) ("it is beyond dispute that a federal court may suspend or dismiss an attorney as an exercise of the court's inherent powers").

[91] *See Wilhite v. Collins*, 459 F.3d 866, 870 (8th Cir. 2006) (requiring an attorney to attend a continuing-legal-education course in federal jurisdiction for Rule 11 violation).

[92] *See Zente v. Credit Mgmt., L.P.*, 789 F.3d 601 (5th Cir. 2015) (dismissing a lawyer's appeal of the district court's action in referring the lawyer to the Western District's disciplinary committee); *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 455 (5th Cir. 1998) ("when a district court finds that a disciplinary sanction more severe than admonition, reprimand, or censure under Rule 11 is warranted, it should refer the matter to the appropriate disciplinary authorities"); *see also* Joseph, *supra* note 51, § 16(B)(7) ("When a Rule 11 violation independently constitutes a violation of the Rules of Professional Conduct . . . or other governing ethical standards, the court may determine to refer the matter to the appropriate judicial or bar association grievance committee as an appropriate sanction.").

Defendants request that the Court impose appropriate sanctions against Plaintiff and Plaintiff's counsel.

### IV.    Conclusion

Defendants respectfully request that the Court conduct an evidentiary hearing on the items specified in Exhibit 1, and impose appropriate sanctions.

Respectfully submitted,

*/s/ Charles Herring, Jr.*
Charles Herring, Jr.
State Bar No. 09534100
chuck@herringpanzer.com
Jason M. Panzer
State Bar No. 00797198
jason@herringpanzer.com
**HERRING & PANZER, L.L.P.**
1411 West Avenue, Suite 100
Austin, Texas  78701
(512) 320-0665 (Office)
(512) 519-7580 (Facsimile)
COCOUNSEL FOR DEFENDANTS,
CHRIS D. and RONI CLARK,
DRAKER ENTERPRISES, INC., and
ROY HENRY

/s/ James C. Harrington
James C. Harrington
Texas Bar No. 09048500
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]
ATTORNEY FOR DEFENDANTS
IN THIS CONSOLIDATED FILING

CERTIFICATE OF SERVICE

I certify that, on August 10, 2016, I electronically filed the foregoing with this Court using the CM/ECF system, which will send notification of such filing to Plaintiff's counsel, Omar W. Rosales. I also served opposing counsel via e-mail at talon_eye@yahoo.com.


/s/ James C. Harrington_____
James C. Harrington